### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-22907-BLOOM/Torres

JAMES RIVER INSURANCE COMPANY,

      Plaintiff,

v.

R.I.C., INC., AMANI FISHER, DARRELL
GREEN, TWANISE FRAGER, AHMAD
FORBES, TAMMIE ANDERSON and
ALEXIS VALLON, as Co-Personal
Representatives of the Estate of Clayton L.
Dillard, III, DANECKA SMITH, as Parent
and Natural Guardian of K.S., KAHLIL
CLARK, DARRIUS COLBERT, Jr., TEVIN
ESTY-LAMBERT, CHARLENE
MICHELLE PETERSON, as Personal
Representative of the Estate of Shaniqua
Peterson, JORDAN KENNETH WHITE,
CIREH CA'XIAIRA-SHANNEROLY
COLLINS, FRANK WILLIAMS,
KA'DEDRA THOMAS, YALONDA
VENTURA, as Personal Representative of
the Estate of Desmond Eugene Owens,
CHARLES TYQUAN HAMPTON,
DENNIS BERNARD ALLEN, Jr., and
MARQUIS BUCKNER,

      Defendants.

_____/

### <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court upon two Motions: (1) Plaintiff James River Insurance

Company's ("James River") Motion for Summary Judgment ("Plaintiff's Motion"), ECF No.

[116], filed on June 18, 2024; Defendants Alexis Vallon and Tammie Anderson filed a Response,

ECF No. [127], to which James River filed a Reply, ECF No. [143]; Defendant Yalonda Ventura

filed a Response, ECF No. [139], to which James River filed a Reply, ECF No. [148]; and (2)

James River's Motion to Strike or Disregard Portions of Yalonda Ventura's Affidavits, ECF No. [145]; Ventura filed a Response, ECF No. [147], to which James River filed a Reply, ECF No. [149]. The Court has reviewed the Motions, all opposing and supporting submissions,[1] the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, James River's Motion for Summary Judgment and Motion to Strike are both granted.

## I.   BACKGROUND

### A.  Material Facts

#### i.      The Policy

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

James River issued a surplus lines insurance policy to R.I.C., Inc. ("R.I.C.") — the owner of eleven shopping centers and commercial buildings in and around Miami — as the Named Insured, bearing Policy No. 00077011-4, and effective from April 29, 2021 to April 29, 2022 (the "Policy"). ECF No. [117] at ¶ 1. The Policy includes the following Assault and Battery Limits of Liability Endorsement (the "Assault & Battery Sublimit") (Form No.: AP2045US 04-11), *id.* at ¶ 2:

**ASSAULT & BATTERY LIMITS OF LIABILITY ENDORSEMENT –
DEFENSE WITHIN LIMITS**

This endorsement modifies insurance provided under the following:

---

[1] James River filed a Statement of Material Facts ("SMF") in support of its Motion for Summary Judgment, ECF No. [117]. Ventura filed a Response to Plaintiff's Statement of Material Facts jointly with an Opposing Statement of Material Facts, ECF No. [140]. James River filed a Response to Ventura's Statement of Material Facts, ECF No. [144]. James River argues that because Anderson and Vallon do not file a response to James River's statement of facts, its material facts should be deemed admitted. ECF No. [143] at 5. Accordingly, the Court deems James River's statement of facts admitted but notes doing so does not change the Court's analysis. The issues in this case require construction of the Policy and underlying state cases, to which there are no factual disputes but merely legal issues. Anderson and Vallon do not dispute the existence and validity of the Policy in their Response, ECF No. [127].

COMMERCIAL GENERAL LIABILITY COVERAGE

LIQUOR LIABILITY COVERAGE

**SCHEDULE**

| Applicable Coverage Forms | Limits of Insurance | |
|---|---|---|
| ☒ **Commercial General Liability Coverage Form** | Each Occurrence or Common Cause Limit | $25,000 |
| ☐ **Liquor Liability Coverage Form** | Aggregate Limit | 50,000 |

A. The amounts shown in the above SCHEDULE are the most we will pay for "claims expense" and those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, or in connection with:

1. Assault or battery, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever;

2. The failure by you, any insured or any person to suppress or prevent an assault or battery;

3. The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to assault or battery;

4. The negligent employment, investigation, hiring, supervision, training, or retention of any person;

5. The use of any force to protect persons or property whether or not the "bodily injury", "property damage" or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of the insured;

6. The failure to render or secure medical treatment or care necessitated by any assault or battery.

Assault includes, but is not limited to, assault, sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of You, any insured, any person, or any causes whatsoever.

Battery includes, but is not limited to, battery, sexual abuse, sexual battery, sexual molestation, and any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the

direction of or negligence of You, any insured, any person, or any causes whatsoever.

B. The Limits of Insurance listed in the above SCHEDULE are not in addition to the Limits of Insurance shown in the Commercial General Liability Declarations or the Liquor Liability Declarations, but specifically limit the Limits of Insurance shown in the Commercial General Liability Declarations and the Liquor Liability Coverage Declarations.

Any "claims expense" arising from any claim or "suit" to which this endorsement applies and incurred by us shall be included within the Limits of Insurance in the above SCHEDULE and shall not be paid in addition to such Limits of Insurance. Our duty to defend any claim or "suit" or to pay any settlement or judgment or defense costs ends after we have paid our applicable Limits of Insurance as forth in the above SCHEDULE. All "claims expense" shall first be subtracted from the Limits of Insurance with the remainder, if any, being the amount available to pay damages. If the applicable Limit of Insurance is exhausted by the payment of settlements, judgments, awards and/or defense costs prior to final settlement, judgment or award, we shall have the right to withdraw from any further defense by tendering control of the defense of the "suit" to you. Any payments made under **SUPPLEMENTARY PAYMENTS – COVERAGE A AND B** will reduce the Limits of Insurance.

C. "Claims expense" shall include investigations, adjustment and legal expense, interests and fees, including court costs and premiums on bonds. "Claims expense" does not include salary charges of regular employees of the Company.

ECF No. [140-2] at 38-39.

The Policy also contained a "Deductible Endorsement" applicable to Damages and Expenses incurred in the subject claims against R.I.C. ECF No. [140] at ¶ 23. The Deductible Endorsement states:

> **THIS ENDORSEMENT CHANGES THE POLICY.**
> **PLEASE READ IT CAREFULLY.**
>
> **DEDUCTIBLE ENDORSEMENT –**
> **DAMAGES AND EXPENSES**
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART SCHEDULE

| Coverage | Amount and Basis of Deductible |
|---|---|
|  |  |

|  | **PER CLAIM or** | **PER OCCURRENCE** |
|---|---|---|
| Bodily Injury Liability $<br><br>OR | $ | $ |
| Property Damage Liability $<br><br>OR | $ | $ |
| Personal & Advertising Injury Liability | $ | $ |
| Damage To Premises Rented To You | $ | $ |
| Medical Payments | $ | $ |
| Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You and/or Medical Payments Combined | $ | $ 2,500 |

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to "claims expense" and damages for all "bodily injury", "property damage" or "personal and advertising injury" or medical expenses however caused):

A. Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and/or Advertising Injury Liability, Damage to Premises Rented to You, Medical Payments or any other coverages provided by this policy to pay "claims expense" and damages on your behalf applies only to the amount of "claims expense" and damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. We may select a deductible amount on either a per claim or a per "occurrence" basis. Our selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:…

5

ECF No. [117-2] at 26.

The Deductible Endorsement required R.I.C. to pay a $2,500.00 deductible per occurrence for claims of "Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You and/or Medical Payments Combined[.]" ECF No. [140] at ¶ 24. The "Deductible Endorsement" made no exception for payment of the deductible for cases or claims arising out of an assault and battery. *Id.* at ¶ 25.

The Parties disagree about the application of this deductible: Ventura states that the Application of the "Deductible Endorsement" to the Assault & Battery Sublimit in this shooting claim would reduce the amount James River was required to pay on behalf of R.I.C. from $50,000.00 to $45,000.00. *Id.* at ¶ 26. James River disagrees and contends that the $2,500.00 deductible applies on a per occurrence basis and each occurrence limit of the Assault & Battery Sublimit is $25,000.00. ECF No. [144] at ¶ 26.

## ii.     The Mass Shooting and Underlying State Actions

As stipulated to by R.I.C. and James River, R.I.C. owns a commercial shopping center located in Miami, Florida, commonly known as the County Club Shopping Center. ECF No. [34] ¶ 1. R.I.C. leased out a commercial unit at the County Club Shopping Center to El Mula Banquet Hall, LLC. *Id.* at ¶ 2. On May 30, 2021, a mass shooting occurred on R.I.C. premises, in a crowd of people standing outside of El Mula Banquet Hall. ECF Nos. [117] ¶ 3, [34] ¶ 3. Ventura disputes whether the shooting occurred on May 29 or May 30, 2021. ECF No. [140] ¶ 3.

The following four lawsuits were filed against R.I.C. and El Mula Banquet Hall in the Circuit Court for Miami-Dade County, Florida (the "Underlying Lawsuits") due to the shooting:

- John'Trell Love; Amani Fisher; Darrell Green; Twanise Frager; Ahmad Forbes; Tammie Anderson and Alexis Vallon, as co-personal representatives of the Estate of Clayton

Dillard, III; Danecka Smith, as legal guardian of K.S.; Khalil Clark; Antonio Jones, Jr.; Darrius Colbert; Tevin Esty-Lambert; Charlene Michelle Peterson, as personal representative of Shankquia Peterson; Jordan Kenneth White; Cireh Ca'Xiaira-Shanneroly Collins; Frank Williams; and Ka'Dedra Elaine Thomas v. R.I.C., Inc., et al., 2021-020937-CA-01.

-   *Yalonda Ventura, as personal representative of the Estate of Desmond Eugene Owens, Sr., v. R.I.C., Inc., et al.,* 2022-013763-CA-01. (Ex. A-3.)

-   *Dennis Bernard Allen Jr., & Charles Tyquan Hampton v. R.I.C., Inc., et al.,* 2022-000810-CA-01.

-   *Marquis Buckner v. R.I.C., Inc., et al.,* 2022-008676-CA-01.

ECF No. [117] ¶ 3.

As a result of  the shooting, counsel for Charlene Michelle Peterson, Personal Representative of the Estate of Shaniqua Peterson ("Peterson"), demanded payment of the Policy's $50,000.00 Assault & Battery Sublimit from James River to settle Peterson's claim. *Id.* at ¶ 4. James River accepted the settlement offer and accordingly tendered a $50,000.00 settlement payment to Peterson's counsel. *Id.* at ¶ 5.

### a. The Instant Action

On August 4, 2023, James River filed the instant declaratory judgment action seeking declaratory judgment on two counts: (1) Declaratory Judgment that the Assault & Battery Sublimit applies to any claim or lawsuit for bodily injury because of the underlying shooting incident, including the Underlying Lawsuits (Count 1), ECF No. [1] ¶¶ 36-40; (2) Declaratory Judgment that the James River Policy is exhausted by James River's settlement payment of the $50,000.00 Assault & Battery Sublimit for Peterson's claim, *id.* at ¶¶41-45. Specifically, James River seeks a

determination that the Assault & Battery Sublimit applies to the Underlying Lawsuits and that the Assault & Battery Sublimit has been exhausted. *Id.*

On October 3, 2023, James River and R.I.C. filed a Joint Stipulation of No Coverage stipulating that the Assault & Battery Sublimit applied to the Underlying Lawsuits, the Assault & Battery Sublimit had been exhausted, and James River owed no further duty to defend or indemnify R.I.C. against the Underlying Lawsuits. ECF No. [34]. On October 9, 2023, R.I.C. filed an answer admitting all the allegations in James River's complaint and consenting to judgment being entered against it. ECF No. [40]; *see also* ECF No. [34]. A default was entered and notices of joint liability filed by James River as to Defendants Charles Tyquan Hampton, Cireh Ca'Xiaira-Shanneroly Collins, Darrell Green, Twanise Frager, Tevin Esty-Lambert, Jordan Kenneth White, Charlene Michelle Peterson, Khalil Clark, Ka'Dedra Thomas, Amani Fisher, Frank Williams, Marquis Buckner, Dennis Bernard Allen, Jr., Danecka Smith, Darrius Colbert, Jr., Ahmad Forbes ECF Nos. [27], [37], [45], [47], [52], [53], [54], [86], [81], [105], [112]. Defendants Alexis Vallon and Tammie Anderson (co-representatives of the estate of Clayton L. Dillard, III) and Yalonda Ventura (representative of the estate of Desmond Eugene Owens) remain in the case.

### iii.    The Motions at Issue

James River requests this Court enter summary judgment in its favor declaring that (1) the $50,000.00 Assault & Battery Sublimit applies to the Underlying Lawsuits; and (2) James River has no further obligation to defend or indemnify R.I.C. in the Underlying Lawsuits because the $50,000.00 Assault & Battery Sublimit has been exhausted. ECF No. [116]. Defendants Vallon and Anderson (jointly) and Ventura oppose the entry of summary judgment. ECF Nos. [127], [139].

James River also seeks to strike Paragraphs 4 and 6 of the Affidavit of Ventura's counsel, Janet Spence, and Paragraph 8 of Ventura's Affidavit. ECF No. [145]. The Affidavit by Spence states:

> 6. After reviewing the James River Policy, the A&B [S]ublimit is illusory and therefore ambiguous and should be disregarded
> 7. The policy is a reducing policy.
> 8. Under the deductible Endorsement the A&B [S]ublimit is reduced to $45,000.00 as RIC is required to pay a $5,000.00 because it is an occurrence endorsement.
> 9. The expenses incurred by the insurer also reduces the A&B sublimit. This case has been pending since May 30, 2021,[] which would suggest that the insurer has incurred a vast amount of expenses in investigating the claims among other expenses.

ECF No. [140-1] at ¶¶ 6-9. The Affidavit by Ventura states:

> 5. On or about May 29, 2021 or May 30, 2021, the father of my two minor children Desmond Eugene Owens, Dr. was killed instantly from stray bullets in a shooting at the business of Defendant R.I.C., the insured in this action….
> 8. I have personally read the James River Policy that was issued to R.I.C. and as far as I see the policy does not specifically make any mention or provides any exclusion from coverage for the mental pain, mental suffering, mental anguish, and the loss of support, comfort and services my children suffers everyday due to the loss of their father.

ECF No. [140-3] at ¶¶ 6, 8.

## II.  LEGAL STANDARD

### A.  Summary Judgment

The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee*

*Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*, 695 F.2d at 1296.

### B.    Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The act "vests district courts with discretion to dismiss declaratory suits when, in their best judgment, the costs outweigh the benefits." *James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1059 (11th Cir. 2022). This is because the Act's use of "may" makes an explicit "textual commitment to discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. Requests for declaratory judgment are often used in the insurance context, as "a declaratory suit allows the insurance company to resolve its liability without waiting for every individual injured party to sue the insured." *James River Ins. Co.*, 34 F.4th at 1058.

### III. DISCUSSION

#### A.    Subject-Matter Jurisdiction

The Court cannot proceed unless it has subject-matter jurisdiction. The Court starts with Ventura's argument raised in her third affirmative defense that the amount-in-controversy is not met so that the Court does not have jurisdiction. James River argues that this case actually involves a seven-figure dispute as it involves damages sought in a mass shooting with three deaths and numerous injured claimants, which would greatly exceed $75,000, as well as a determination that a policy with a $1,000,000 each occurrence and $2,000,000 aggregate limit does not apply to the Underlying Lawsuits. ECF No. [116] at 13.

"[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case..." *Smith v. GTE*

11

*Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001). "Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins., Co.,* 31 F.3d 1092, 1095 (11th Cir.1994). Here James River invokes diversity jurisdiction as the basis for jurisdiction for its lawsuit. ECF No. [1] at ¶ 2. In order to invoke a federal court's diversity jurisdiction, a plaintiff must claim that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citation omitted).

"When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted). In other words, "[t]he value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiff[ ] if the injunction were granted." *Leonard v. Enterprise Rent A Car,* 279 F.3d 967, 973 (11th Cir. 2002). "In declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence… the amount in controversy is based upon the damages claimed in the state-court lawsuit." *Co. Prop. & Cas. Ins. Co. v. Metal Roofing Sys.*, No. 13-60659-CIV, 2013 WL 5770730, at *2 (S.D. Fla. Oct. 24, 2013). Applying that principle in *Co. Prop & Cas. Inc.*, this Court held that "monetary relief sought will likely exceed $75,000" in a case where a plaintiff sued in state court after suffering a brain injury that left him permanently disabled, and the defendant's insurer sought a declaration of its duty to defend in federal court with respect to the state-court lawsuit. *Id.* The amount in controversy was accordingly sufficient for diversity jurisdiction.

The amount-in-controversy is also sufficient here: if Plaintiff obtains the declaratory judgment it seeks, it will be relieved of the payment of damages sought in a mass shooting with

three deaths and numerous injured claimants in four underlying state actions. "[T]he amount in controversy is based upon the damages claimed in the state-court lawsuit." *Co. Prop. & Cas. Ins. Co.*, No. 13-60659-CIV, 2013 WL 5770730, at *2. Accordingly, "[a] reasonable inference can be made that the damages at issue in the underlying action[s] will [] exceed the amount-in-controversy threshold" of $75,000. *Id.* at *3.

The Court is satisfied that there is federal jurisdiction in this declaratory judgment action and proceeds to address the merits of the case.

### B.      James River's Motion to Strike

The Court first turns to James River's Motion to Strike, ECF No. [145], which would narrow the evidence to consider when reviewing James River's Motion for Summary Judgment. James River moves to strike — or alternately disregard — portions of Spence and Ventura's Affidavits pursuant to Federal Rule of Civil Procedure 56(c), specifically:

- Paragraphs 4 and 6 of Spence's Affidavit, where Spence indicates that she has "reviewed many commercial general liability insurance policies" and that "[a]fter reviewing the James River Policy, the A&B sublimit is illusory and therefore ambiguous and should be disregarded." ECF No. [140-1] at ¶¶ 4, 6.

- Paragraph 8 of Ventura's Affidavit, where Ventura states she "personally read the James River Policy … and as far as I see the policy does not specifically make any mention or provide[] any exclusion from coverage for the mental pain, mental suffering, mental anguish, and the loss of support, comfort and services [her] children suffer[ ] everyday due to the loss of their father." ECF No. [140-3], ¶ 8.

Ventura responds that the Affidavits should not be stricken as they were based on personal knowledge, both affiants were competent, and the evidence would be admissible at trial. ECF No.

[147] at 2-4. James River replies that Ventura and Spence's Affidavits should be stricken because testimony regarding Ventura's legal interpretation of the Policy is inappropriate and Spence, Ventura's attorney, has not been certified as an expert witness. ECF No. [148] at 2.

Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Affidavits based on information and belief are insufficient." *Ulysse v. Waste Mgmt. of Fla.*, No. 11-80723-CIV, 2013 WL 12177350, at *1 (S.D. Fla. Sept. 9, 2013). "Any portion of an affidavit that does not comply with Rule 56 may not be considered for purposes of summary judgment." *Id.* Improper affidavits "which set forth conclusory arguments rather than statements of fact based on personal knowledge… may be subject to a motion to strike." *Thomas v. Alabama Council on Hum. Rels., Inc.*, 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003). "[I]f an affidavit contains some improper material, the court need not strike the entire affidavit, rather it may strike or disregard the improper portions and consider the remainder of the affidavit." *Id.*

Both paragraphs 4 and 6 of Spence's Affidavit and paragraph 8 of Ventura's Affidavit are "bald statement[s] of a legal conclusion, which the Court cannot accept in an affidavit submitted on summary judgment." *Leysoto v. Mama Mia I., Inc.*, No. 08-60750-CIV, 2009 WL 10668589, at *2 (S.D. Fla. Oct. 19, 2009). Further, they are not "made on personal knowledge" and as such, they do not comply with Federal Rule of Civil Procedure 56(c)(4). Because neither Spence nor Ventura have been certified as an expert, they cannot offer opinion testimony such as a legal conclusion. *See Forte v. Otis Elevator Co.*, No. 1:14-CV-20360-UU, 2015 WL 12860841 (S.D. Fla. Feb. 18, 2015). Accordingly, the Court strikes paragraphs 4 and 6 of Spence's Affidavit and

Case No. 23-cv-22907-BLOOM/Torres

paragraph 8 of Ventura's Affidavit and disregards those paragraphs when considering James River's Motion for Summary Judgment.[2]

James River's Motion to Strike, ECF No. [145], is granted.

## C.   James River's Motion for Summary Judgment

The Court now turns to James River's Motion for Summary Judgment. James River requests that this Court enter summary judgment in its favor declaring that (1) the $50,000.00 Assault & Battery Sublimit applies to the Underlying Lawsuits; and (2) James River has no further obligation to defend or indemnify R.I.C. in the Underlying Lawsuits because the $50,000.00 Assault & Battery Sublimit has been exhausted.

### i.   Sublimit For Claims Arising Out of an Assault or Battery is Enforceable

James River argues it is entitled to summary judgment because the endorsement plainly states that bodily injury claims arising out of an assault or battery are subject to a $50,000 aggregate Sublimit. ECF No. [116] at 3. James River states the Assault & Battery Sublimit is enforceable and valid and cites numerous cases in support. *Id.* at 4. Ventura responds that the policy is illusory and the Assault & Battery Sublimit should be disregarded because it reduces all or virtually all coverage. ECF No. [139] at ¶¶ 12, 20 (citing *Purrelli v. St. Farm Fire Cas. Co.*, 698 So. 2d 618,

---

[2] Ventura seeks to strike James River's exhibits because James River did not file an index of exhibits within twenty-four hours of filing a motion for summary judgment, in compliance with the Court's order. ECF No. [138] at 3-4. James River has since cured the deficiency. ECF No. [134]. The Court declines to strike the exhibits for this initial non-compliance.

Further, Ventura seeks to strike ECF Nos. [117-3], [117-4], and [117-6] as they are copies of unauthenticated complaints from the Circuit Court of Miami-Dade County and contain hearsay under Fed. R. Evid 801(c). James River retorts that the Court can take judicial notice of pleadings filed in other courts. ECF No. [142] at 4. James River is correct. "[C]ourts may take judicial notice of public records, such as a pleading filed in another court, because such documents are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) (citing *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1278 (11th Cir.1999)). The Court declines to strike James River's exhibits, ECF No. [117-3], [117-4], and [117-6].

620, 621 (Fla. 2nd DCA 1997)). Ventura asserts that the policy is also illusory because when the deductible and "claims expense" are deducted, there are no funds left to cover any judgment or settlements. *Id.* at ¶¶ 13, 20(b). Ventura further argues that this makes the Assault & Battery sublimit ambiguous as it can be read to eliminate coverage for injury unconnected to assault and battery. ECF No. [138] at ¶ 28. James River replies that the Assault & Battery Sublimit cannot be read as "completely" taking away coverage, as it does not exclude coverage but merely imposes a sublimit for a small category of claims. ECF No. [142] at 2.

Pursuant to Florida law, "interpretation of an insurance policy is a question of law to be decided by the court." *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985) (applying Florida law). In so doing, the court must construe the "contract in its entirety, striving to give every provision meaning and effect." *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1382 (11th Cir. 1993) (citing *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938, 941 (Fla. 1979)). Where a term in an insurance policy is ambiguous, a court must "construe it in favor of the insured and against the insurer." *Gas Kwick, Inc. v. United Pacific Ins. Co.,* 58 F.3d 1536, 1539 (11th Cir. 1995) (citing *Davis v. Nationwide Life Ins. Co.,* 450 So.2d 549, 550 (Fla. 5th DCA 1984)). However, a "court cannot rewrite an insurance contract to extend coverage beyond what is clearly set forth in the contractual language." *Szczeklik v. Markel Int'l Ins. Co., Ltd.,* 942 F.Supp.2d 1254, 1260 (M.D. Fla. 2013) (quoting *Fla. Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron,* 721 So.2d 825, 826 (Fla. 3d DCA 1998)). Although the insured bears the burden of proving that a claim is covered by the insurance policy, the "burden of proving an exclusion to coverage is ... on the insurer." *LaFarge Corp. v. Travelers Indemn. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997).

### a.    The Sublimit is Valid and Enforceable

The Court starts with a reading of the Assault & Battery Sublimit and agrees with James River that, on its face, the Sublimit is valid and enforceable. "Assault and battery exclusions are routinely included in commercial general liability policies based upon a review of Florida appellate opinions…" *James River Ins. Co. v. O'Gallagher LLC*, No. 21-80865-CV, 2022 WL 2961024, at *2 (S.D. Fla. July 19, 2022). This Court, other federal district courts in Florida, and Florida appellate courts regularly enforce assault and battery exclusions. *See id.*; *Miami Beach Ent., Inc. v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161, 162 (Fla. 3d DCA 1996); *Seneca Specialty Ins. Co. v. 845 N., Inc.*, No. 3:14-CV-922-J-34PDB, 2015 WL 3400415, at *4 (M.D. Fla. May 26, 2015). This Court has upheld and applied a nearly identical Assault & Battery Sublimit as valid and enforceable. *See Great Am. All. Ins. Co. v. Monte Carlo of Miami Condo., Inc.*, No. 22-21238-CIV, 2023 WL 9102199, at *2 (S.D. Fla. Feb. 22, 2023).

### b.    The Policy is Not Illusory

The Court next turns to Ventura's argument that the Policy is invalid because it illusory. "Coverage is illusory under Florida law only if the insurance policy grants coverage with one hand and then with the other completely takes away the entirety of that same coverage. Completeness is key." *Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1265 (11th Cir. 2021). "[T]here is a dispositive difference between complete contradiction or complete negation and merely excepting some or many or even most things from coverage." *Id.* at 1266. Here, James River and R.I.C. entered into a contract whereas James River provided surplus lines insurers' Policy to R.I.C. from April 29, 2021 to April 29, 2022. ECF No. [140-2] at 2. By its plain text, the Assault & Battery Sublimit states that:

> [t]he amounts shown in the above SCHEDULE are the most we will pay for "claims expense" and those sums that the insured becomes legally obligated to pay as

damages because of "bodily injury" … arising out of, resulting from, or in connection with… Assault or battery, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever[.]

ECF No. [140-2] at 38. The amounts for each occurrence or common cause limit for assault and battery is $25,000 and the aggregate limit is $50,000. *Id.* Per the text of the policy, recovery for assault and battery is not eliminated but merely capped at $25,000 for a single occurrence and $50,000 in the aggregate. "[W]here a limitation on coverage does not 'completely swallow[ ] the insuring provision,' the policy is not illusory." *Warwick Corp. v. Turetsky*, 227 So. 3d 621, 625 (Fla. 4th DCA 2017) (quoting *Auto–Owners Ins. Co. v. Christopher*, 749 So.2d 581, 582 (Fla. 5th DCA 2000)). As in *First Mercury*, coverage is not illusory because "[t]he assault and battery endorsement nullifies nothing…. It applies only to claims connected with assault or battery, and it does not nullify all coverage of those claims but only reduces the amount of the coverage." *First Mercury Ins. Co. v. Sudderth*, 620 F. App'x 826, 830 (11th Cir. 2015).

Though Ventura compares the coverage at issue to *Purrelli*, the comparison is inapposite. In *Purrelli*, the policy was ambiguous because it "purport[ed] to provide coverage for specified intentional torts, including invasion of privacy, but attempts to limit coverage to accidents and exclude intentional acts." *Purrelli*, 698 So. 2d at 621. The court held that it led to the patently absurd result that an intentional tort was covered only if unintentional. There is no such ambiguity here.

The Court next turns to Ventura's argument that when the deductible and "claims expense" are deducted, no funds are left to cover any judgment or settlements, thus rendering the policy illusory. The Policy does state that "[a]ny 'claims expense' arising from any claim or 'suit' to which this endorsement applies and incurred by us shall be included within the Limits of Insurance in the above SCHEDULE and shall not be paid in addition to such Limits of Insurance." ECF No.

[140-2] at 39. However, even if claims expense are deducted from the Assault & Battery recovery amount, Ventura attaches no evidence to support her argument that the $2,500 deductible and the deduction of claims expenses would "swallow[ ] the insuring provision" such that the policy would be illusory. *Warwick Corp.*, 227 So. 3d at 625. Though the $2,500 deductible and deduction of claims expenses may affect the insured's recovery, it "does not nullify all coverage of those claims but only reduces the amount of the coverage." *First Mercury Ins. Co.*, 620 F. App'x at 830. "In order for an exclusion to render a policy's coverage illusory it must eliminate all—or at least virtually all—coverage in a policy." *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017). Because the Assault & Battery Sublimit does not eliminate all or virtually all coverage in the James River Policy, it is not illusory.

Accordingly, the Court addresses whether the mass shooting at issue in the underlying state cases fall within the scope of the Assault & Battery Sublimit.

### ii. Sublimit For Claims Arising Out of an Assault or Battery Applies to Mass Shooting

James River asserts the mass shooting clearly falls within the Policy's definition of assault and battery, as evidenced by the case law and the fact that each of the underlying lawsuits define the mass shooting as a "criminal assault." ECF No. [116] at 5. Further, James River argues the exact Sublimit endorsement has been upheld and applied as written in two recent decisions, one by this Court. *Id.* at 9-10. Ventura responds that her claims are not claims for bodily injury but are survivor claims for pain and suffering, mental anguish, loss of services which do not come under the Assault and Battery Sublimit. ECF No. [139] at ¶ 31. James River replies that if the underlying claim did not allege "bodily injury," then the insuring agreement of the Policy would not be satisfied and there would be no coverage whatsoever. ECF No. [142] at 4.

There is little question that the mass shooting on R.I.C. premises is an assault and battery such that the Assault & Battery Sublimit applies. Courts look to allegations in the complaint of the underlying state case to determine whether an insurance company must cover damages in those cases. *See*, *e.g.*, *James River Ins. Co. v. O'Gallagher LLC*, No. 21-80865-CV, 2022 WL 2961024, at *2 (S.D. Fla. July 19, 2022). Here, the allegations in the four underlying state cases describe that unidentified shooters opened fire into a crowd standing outside of El Mula Banquet Hall killing, injuring, and/or causing emotional and/or psychological injury to many, including state plaintiffs. *See*, *e,g,*, ECF No. [117-3] at ¶ 1.

Those allegations plainly fall within the scope of the Assault & Battery Sublimit. The policy defines "assault" as "any threatened harmful or offensive contact between two or more persons[;]" and "battery" as "any actual harmful or offensive contact between two or more persons." ECF No. [140-2] at 38. There is little question that a shooting falls within the Policy's definition of battery as to those who are shot: it is an "actual harmful or offensive contact[.]" *Id.* Further, a shooting falls within the Policy's definition of assault as to those threatened but not shot: it is a "threatened harmful or offensive contact[.]" *Id.* Courts have repeatedly found that a shooting is an assault and/or battery when confronted with insurance coverage disputes involving shootings. *See O'Gallagher LLC*, No. 21-80865-CV, 2022 WL 2961024, at *2 (allegations that individual was physically assaulted and shot with a gun on insured business's premises fell within the definition of assault and battery in assault and battery exclusion); *Evanston Ins. Co. v. S & Q Prop. Inv., LLC*, No. 8:11-CV-2121-T-27MAP, 2012 WL 4855537, at *2 (M.D. Fla. Oct. 11, 2012) (finding a shooting death plainly constituted a battery when giving battery its plain and generally accepted meaning); *Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1318 (S.D. Fla. 2006) (finding an incident fell within the assault and battery exclusion when a criminal

assailant shot and killed an individual on the insured club's premises). The mass shooting at R.I.C. is an assault and battery under the Policy's Assault & Battery Sublimit.

Further, the damages sought in the four underlying state lawsuits arise out of the assault and battery. The Assault & Battery Sublimit applies to "'claims expense' and those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … *arising out of, resulting from, or in connection with*:… Assault or battery[.]" ECF No. [140-2] at 38 (emphasis added). "The phrase 'arising out of' requires only 'some level of causation greater than coincidence[;]' it is broader than the phrase 'caused by.'" *O'Gallagher*, No. 21-80865-CV, 2022 WL 2961024, at *3 (quoting *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 293 (Fla. 2007)). Here, the lawsuits based on injuries and deaths resulting from the mass shooting clearly arise out of an assault and battery, as they are directly caused by the mass shooting.

Ventura's suit against R.I.C. seeks damages pursuant to the death of the father of her children, Desmond Eugene Owens, Sr., in the shooting. ECF No. [117-4] ¶¶ 8-9, 22. It is clearly a sum "that the insured [R.I.C.] becomes legally obligated to pay as damages because of 'bodily injury' … arising out of, resulting from, or in connection with:… Assault or battery[,]" namely the mass shooting that resulted in Owens's death. ECF No. [140-2] at 38. However, because the Assault and Battery Sublimit applies and the aggregate limit has been exhausted, Ventura cannot recover from James River.

Further, James River is correct that if Ventura was not suing based on underlying "bodily injury" or "property damage," then she would be entitled to no coverage under the policy. The James River policy applies to the below:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured

against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

ECF No. [140-2] at 8.

Accordingly, barring any affirmative defense preventing relief, James River is entitled to summary judgment on Count 1 for Declaratory Judgment: the Assault & Battery Sublimit applies to any claim or lawsuit for bodily injury because of the underlying shooting incident, including the Underlying Lawsuits (Count 1).

### iii.      Sublimit Has Been Exhausted

James River argues that the Assault & Battery Sublimit has been exhausted because James River accepted the settlement offer and accordingly tendered a $50,000 settlement payment to Peterson's counsel. ECF No. [116] at 10-11. Anderson and Vallon argue that there is an issue of material fact as James River acted in bad faith in exhausting: it chose to pay the claim of the Peterson estate to the exclusion of the Dillard estate despite receiving a demand on behalf of the Dillard estate and having notice of its claim. ECF No. [127] at 2, 4-6. James River responds that settlement efforts with other claimants, prior settlement demands from Anderson, James River's motives in settling with Peterson, the values of the underlying claims are irrelevant, as there is no "bad faith action" pending in this court but merely declaratory relief claims. ECF No. [143] at 2. James River further states that any bad faith action is premature and Vallon and Anderson have no standing to bring it. ECF No. [143] at 2.

All parties agree that James River has tendered a $50,000.00 settlement to Peterson's estate. Because the aggregate limit that James River owes R.I.C. "as damages because of 'bodily injury', ... arising out of, resulting from, or in connection with... [a]ssault or battery" is $50,000, James River has no further obligations to tender money related to the mass shooting. ECF No. [140-2] at 38. An insurance carrier can enter "into reasonable settlements with some claimants to

the exclusion of others based on an exercise of its discretion." *Farinas v. Fla. Farm Bureau Gen.*

*Ins. Co.*, 850 So. 2d 555, 561 (Fla. 4th DCA 2003) (citing *Harmon v. State Farm Mutual*

*Automobile Insurance Co.,* 232 So.2d 206 (Fla. 2nd DCA 1970)). Still, the insurer must "act in

good faith and with due regard for the interests of the insured." *Id.* at 559 (citation omitted):

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

> *Farinas*, 850 So. 2d at 559.

Vallon and Anderson argue that a factual dispute exists regarding the payment of the estate

of Peterson's claim to the expense of the Dillard estate despite its demand for payment. However,

the issue of James River's bad faith does not preclude summary judgment on this declaratory

judgment action, as the issue of bad faith is not properly before the Court. In *Farinas*, appellants

had "all filed third-party bad faith actions alleging that [the insurer] entered into settlements

without due regard for the interests of the insured." *Id.* at 558. There,

> Under this new standard of culpability, if an insurer was found to have acted in bad faith, the insurer would have to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits. This type of claim became known as a third-party bad faith action. *State Farm Mut. Ins. Co. v. Laforet,* 658 So.2d 55, 57–58 (Fla.1995)

> Even though the bad faith occurs between the insurer and its named insured, Florida law allows the injured third party insured to bring an action directly against the insurer.

*Id* at 558. In those instances, "[t]he determination of whether an insurer has satisfied this

standard [was] one for the jury." *Id.* at 559. But as James River notes, there is no third-party

common law bad faith action or counterclaim at issue before this court, nor a statutory cause of action for bad faith under Fla. Stat. § 624.155(b)(1).[3]

Anderson and Vallon cite no support for their argument that any purported bad faith on the part of James River would preclude summary judgment on its declaratory judgment counts. Instead, the cases cited by Anderson and Vallon involve independent bad faith actions. *See Auto-Owners Ins. Co. v. Conquest*, 658 So. 2d 928, 929 (Fla. 1995); *Farinas*, 850 So. 2d at 558 ("Appellants intervened and ultimately all filed third-party bad faith actions alleging that Farm Bureau entered into settlements without due regard for the interests of the insured"); *Liberty Mut. Ins. Co. v. Davis*, 412 F.2d 475, 479 (5th Cir. 1969) (pertaining to the issue of bad faith in a refusal to settle claim).

Moreover, any bad faith action is premature. A "bad faith action does not accrue until the underlying issues of liability and damages have been resolved." *D'Agostino v. Safeco Ins. Co. of Illinois*, 669 F. Supp. 3d 1187, 1189 (N.D. Fla. 2023). This is because "the issues of liability and damages, which must be resolved in Plaintiff's favor before a bad faith claim arises, might not be resolved in Plaintiff's favor, and consequently, at this time, the claim remains contingent." *Id.* at 1190–91; *see also Novak v. Safeco Ins. Co. of Illinois*, 94 F. Supp. 3d 1267, 1269 (M.D. Fla. 2015) ("Florida courts have held that a cause of action in court for [bad faith] is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract."

---

[3](1) Any person may bring a civil action against an insurer when such person is damaged:
…
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests[.]

Fla. Stat. § 624.155(b)(1).

(citation and internal quotation marks omitted)). It is premature for this Court to consider whether James River violated its duty of good faith toward Vallon and Anderson.

Accordingly, summary judgment for James River is appropriate on Count 2 seeking Declaratory Judgment: the James River Policy is exhausted by James River's settlement payment of the $50,000.00 Assault & Battery Sublimit for Peterson's claim, barring any affirmative defense preventing judgment.

### iv.    Discovery

Before turning to Defendants' affirmative defenses, the Court considers Anderson and Vallon's argument that James River has attempted to use discovery as a sword and a shield in this matter, by claiming in its discovery responses that their requests are premature. ECF No. [127] at 6. Anderson and Vallon argue that this prevented the jury from determining whether James River improperly paid the Peterson estate to the exclusion of the Dillard estate, which was an issue for the jury to decide. *Id.* at 8-9. James River responds that this dispute is untimely as Anderson and Vallon did not seek to confer with James River on this issue within the discovery period, nor did they timely submit any discovery dispute to the Court. ECF No. [143] at 5.

The legal basis for Anderson and Vallon's requests to prevent summary judgment based on James River's alleged discovery violations is unclear. Anderson and Vallon did not seek a hearing pursuant to these purported violations nor raise them with this Court within the discovery period, nor do they seek sanctions against James River in the form of summary judgment being granted against it. Accordingly, the Court sees no reason why discovery violations by James River, if any, not previously raised by Anderson and Vallon, should preclude the entry of summary judgment for James River.

### v.     Affirmative Defenses

The Court addresses James River's request for summary judgment on all of Anderson and

Vallon's and all of Ventura's affirmative defenses.

### a.   Anderson and Vallon's Affirmative Defenses

Anderson and Vallon's four affirmative defenses are as follow:

1. First Affirmative Defense
   Discovery has yet to be conducted on this matter therefore it is premature for
   Plaintiff to assume and/or allege that this action is not covered by the
   Underlying Complaint.

2. Second Affirmative Defense
   All or part of Plaintiff's claims are barred by waiver.

3. Third Affirmative Defense
   Defendant, Estate of Clayton Dillard, reserves the right to add additional
   affirmative defenses during pretrial discovery.

4. Fourth Affirmative Defense
   Plaintiff's Complaint fails to state any claim on which relief may be granted.

ECF No. [17] at 4.

James River argues that it is entitled to summary judgment on each of Anderson and

Vallon's four affirmative defenses, which are comprised of a single sentence that fails to

adequately explain their basis: the first is not a valid affirmative defense; the second is insufficient

as waiver cannot create coverage; the third and fourth are invalid affirmative defenses. ECF No.

[116] at 12-13. Vallon and Anderson respond that Plaintiff simply dismisses the defense of waiver

and makes no effort to demonstrate conclusively that this defense cannot be proven, as it is required

to do and Defendant is under no duty to even submit evidentiary matter to establish the defense.

ECF No. [127] at 10. Anderson and Vallon do not respond to James River's arguments on the other

affirmative defenses.

"Merely stating there is no evidence to support the affirmative defenses is not enough to prevail on summary judgment." *Fed. Deposit Ins. Corp. for Superior Bank v. Hall*, No. 8:14-CV-834-T-24 TGW, 2016 WL 7325590, at *2 (M.D. Fla. Aug. 29, 2016) (citation omitted). Inversely, "a defendant may not defeat summary judgment simply by alleging affirmative defenses." *United States v. Tubbs*, No. 19-CV-80553-Civ-Middlebrooks/Brannon, 2019 WL 7376706, *2 (S.D. Fla. Nov. 22, 2019). "[T]he burden of establishing an affirmative defense lies on the *defendant,* not on the plaintiff." *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008) (emphasis in original). Accordingly,

> Because Defendant bears the burden of proof on its affirmative defenses at trial, Defendant, as the nonmovant here, also "bears the initial burden of showing that the affirmative defense is applicable." *Special Purpose Accts. Receivable Coop. Corp. v. Prime One Cap. Co.*, 125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990))…. Upon such a showing, the burden then shifts to the plaintiff to show that the affirmative defense does not bar the plaintiff's claim. *Id.* (citing *Weitz*, 913 F.2d at n. 13 (holding that "[o]nce a defendant shows that the applicable statute of limitations bars the claim, the burden shifts to the plaintiff to demonstrate that an exception or tolling provision applies".)).

*Tony v. Evanston Ins. Co.,* No. 22-CV-62076-WPD, 2024 WL 1830876, at *6 (S.D. Fla. Mar. 20, 2024).

### 1.    First, Third and Fourth Affirmative Defenses

Anderson and Vallon do not respond to James River's arguments as to their first, third, and fourth affirmative defenses. Accordingly, they do not meet their burden as the non-moving parties to "make a sufficient showing on each essential element of the case for which he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825 (citation omitted). Further, the Court agrees with James River that seeking discovery, the right to assert additional defenses, and failure to state a claim are invalid affirmative defenses. Accordingly, James River is entitled to summary judgment on Anderson and Vallon's first, third, and fourth affirmative defenses.

### 2.      Second Affirmative Defense

The Court next turns to Anderson and Vallon's second affirmative defense of waiver. The defense states: "All or part of Plaintiff's claims are barred by waiver." ECF No. [17] at 4. James River argues that Florida law is clear that waiver cannot create coverage. ECF No. [116] at 13. Anderson and Vallon respond that "Plaintiff has failed to negate the affirmative defense of waiver" so is not entitled to summary judgment, and that "Plaintiff has cited record evidence that raises genuine issues of material fact concerning this dispute." ECF No. [127] at 10.

It is unclear from Anderson and Vallon's response what it is they assert was waived. Further, it is unclear how waiver would prevent the application of the Assault and Battery Sublimit to their claims. Anderson and Vallon have the burden of proof on their affirmative defenses. Though they state the elements of waiver in their Response and claim that James River "cited record evidence that raises genuine issues of material fact concerning this dispute," they do not explain the facts to which they refer. *Id.* at 10. Accordingly, they do not "make a sufficient showing on each essential element of the case for which [they] ha[ve] the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825. Vallon and Anderson quote *Harrison* for support that "[t]he defendants were under no duty to submit evidentiary matter to establish their affirmative defense." *Harrison v. McCourtney*, 148 So. 2d 53, 56 (Fla. 2nd DCA 1962). While true, it does not mean that Vallon and Anderson are absolved of their responsibility to show a genuine dispute of material fact as to their affirmative defenses such that summary judgment is not warranted.

Accordingly, James River is entitled to summary judgment on Anderson and Vallon's second affirmative defense.

### b. Ventura's Affirmative Defenses

#### 1.    First and Second Affirmative Defenses: Insufficient Service

Ventura's first two affirmative defenses state as follows:

FIRST AFFIRMATIVE DEFENSE
The Defendant affirmatively alleges that the action must be dismissed against Defendant VENTU[]RA for Insufficiency of process pursuant to FRCP 12(b)(4).

SECOND AFFIRMATIVE DEFENSE
The Defendant affirmatively alleges that the action must be dismissed against Defendant VENTU[]RA for Insufficiency of Service of Process pursuant to FRCP 12(b)(5).

ECF No. [106] at 6-7.

James River argues that Ventura' first two affirmative defenses alleging insufficient service of process are legally insufficient as they provide no explanation as to how service was improper and James River was properly served by publication. ECF No. [116] at 13. Ventura does not respond to this argument.

Ventura does not answer James River's arguments on this point, so she does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825. Additionally, James River points out that Ventura was properly served by publication, as authorized by this Court's Order Granting Plaintiff's Motion to Execute Alternative Service by Publication and for Extension of Time, ECF No. [88].

James River is entitled to summary judgment on Ventura's first and second affirmative defenses.

#### 2.    Third Affirmative Defenses: Amount in Controversy

Ventura's third affirmative defense states as follows:

THIRD AFFIRMATIVE DEFENSE

Case No. 23-cv-22907-BLOOM/Torres

The Defendant affirmatively alleges that the case should be dismissed as the Court lacks subject matter jurisdiction as jurisdictional amount has not been met, Plaintiff asserts in its Complaint (D.E. 1) that its policy limit is $50,000.00 and its limit of liability is only $50,000.00 and further that the $50,000 has been exhausted.

ECF No. [106] at 7.

James River states that the third affirmative defense is incorrect as the damages in the underlying lawsuit involve a mass shooting with three deaths and numerous injured claimants so greatly exceed $75,000.00. *Id.* at 13. Ventura does not respond to this argument.

Ventura does not answer James River's arguments on this point, so she does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825. Further, the Court has already addressed subject-matter jurisdiction and found that James River has met the amount in controversy requirement. James River is entitled to summary judgment on Ventura's third affirmative defense.

### 3. Fourth and Fifth Affirmative Defenses: Subject-Matter Jurisdiction

Ventura's fourth and fifth affirmative defenses state:

FOURTH AFFIRMATIVE DEFENSE
The Defendant affirmatively alleges that the case should be dismissed as the Court lacks subject matter jurisdiction as no actual case or controversy exist as required by Article III and 28 U.S.C. § 2201, as the Plaintiff and its insured R.I.C. have entered a "JOINT STIPULATION OF NO COVERAGE" (D.E. 34)

FIFTH AFFIRMATIVE DEFENSE
The Defendant affirmatively alleges that the case should be dismissed as the Court lacks subject matter jurisdiction as no actual case or controversy exist as required by Article III and 28 U.S.C. § 2201, ) as the insured R.I.C. answered the complaint and admitted all the allegations in Plaintiff's complaint. (D.E. 40).

ECF No. [106] at 7.

James River asserts that Ventura's fourth and fifth affirmative defenses, which allege there is no case or controversy since R.I.C. has filed a stipulation conceding the Assault & Battery

Sublimit has been exhausted, fail since a mere stipulation does not establish the Assault & Battery Sublimit is legally enforceable. ECF No. [116] at 14. Ventura does not respond to this argument.

Ventura does not answer James River's arguments on this point, so she does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825.

The Court finds that there is a case or controversy here and it has jurisdiction over this case. The Declaratory Judgment Act, 28 U.S.C. § 2201, "echoing the 'case or controversy' requirement of [A]rticle III of the Constitution, provides that a declaratory judgment may only be issued in the case of an 'actual controversy.' " *Emory v. Peeler,* 756 F.2d 1547, 1551–52 (11th Cir.1985). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Id.* at 1552. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir.1999) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). "Injury in the past ... does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Id.* at 1348.

Here, James River seeks a declaratory judgment to avoid payment beyond the aggregate Assault & Battery Sublimit of its Policy with R.I.C. in the underlying state cases. Therefore, it properly seeks declaratory relief based on the likelihood that it will suffer injury in the future. Defendants and James River have adverse legal interests: James River seeks a declaratory judgment that Defendants are not entitled to any additional payments under the Policy, whereas Defendants seek to recover more than the Assault & Battery Sublimit. James River thus satisfies

the "case or controversy" requirement of Article III and the "actual controversy" requirement of 28 U.S.C. § 2201.

James River is entitled to summary judgment on Ventura's fourth and fifth affirmative defenses.

### 4.    Sixth Affirmative Defense: Overlapping State Claims

Ventura's sixth affirmative defense states as follows:

SIXTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that the case must be dismissed as there are three separate overlapping and/or parallel state claims pending in the Eleventh Judicial Circuit Court in Miami-Dade County and the (1) the State of Florida has a strong interest in having the issues raised in the federal declaratory action decided in the state courts; (2) the judgment in the federal declaratory action would not settle the underlying case or controversy; (3) the federal declaratory action would not serve a useful purpose in clarifying the legal relations at issue between all of the parties; (4) the declaratory remedy is being used merely for the purpose of "procedural fencing" - that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable. (5) use of a federal declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; (6) there is an alternative remedy that is better or more effective; (7) the underlying factual issues in the State cases are important to an informed resolution of the case; and (8) there is a close nexus between the underlying factual and legal issues and state law and/or public policy, and state law not federal common or statutory law dictates the resolution of this declaratory judgment action[.]

ECF No. [106] at 7-8.

James River argues that Ventura's sixth affirmative defense, stating that this Court should not exercise its jurisdiction to hear this case, fails as declaratory judgment actions are commonly used and encouraged to resolve coverage disputes in Florida. ECF No. [116] at 14.

Ventura does not answer James River's arguments on this point, so she does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825.

Further, Ventura's sixth affirmative defense has no merit. A federal court considers

whether to proceed with declaratory judgment actions that raise issues also disputed in state court proceeding by applying the *Ameritas* factors. "When district courts decide whether to proceed with declaratory judgment actions that raise issues also disputed in state court proceedings, they are called to balance conflicting interests—to foster efficient dispute resolution while still preserving the States' interests in resolving issues of state law in their own courts." *Rich Bon Corp.*, 34 F.4th at 1058. The Eleventh Circuit has "provided non-exclusive 'guideposts' for district courts to consider when deciding whether to dismiss a federal declaratory judgment action that overlaps with a state case[]" in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). "Discerning 'the propriety of declaratory relief' requires 'a circumspect sense' of the whole affair." *Rich Bon Corp.*, 34 F.4th at 1058 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).

The Court briefly discusses the *Ameritas* factors to determine whether or not declaratory relief is appropriate here. The factors are as follow:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
(2) whether the judgment in the federal declaratory action would settle the controversy;
(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
 (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
(6) whether there is an alternative remedy that is better or more effective;
(7) whether the underlying factual issues are important to an informed resolution of the case;
(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 1059–60 (quoting *Ameritas Variable Life Ins.*, 411 F.3d at 1328).

The underlying state cases involve negligence claims against R.I.C. and El Mula Banquet Hall, LLC. ECF Nos. [117-3], [117-4], [117-5], [117-6]. They do not include James River as a party. Looking at all the *Ameritas* factors jointly, all but the first and ninth inform the Court to address this declaratory judgment action, as it would be "clarifying insurance companies' liability quickly and directly." *Rich Bon Corp.*, 34 F.4th at 1058. The first factor raises a possible state interest, and the ninth factor does not raise substantial federalism concerns cautioning the district court not to hear this case.

Under the first *Ameritas* factor, Florida has a possible interest in having this action adjudicated in state court as the declaratory judgment at issue determines whether an out-of-state insurance company or a Florida business should pay damages in the underlying state actions by applying Florida law. Under the second factor, declaratory relief would not resolve the underlying actions but simply clarify whether or not James River has exhausted the Assault & Battery Sublimit or if it is responsible for any damages in the underlying actions. Under the third factor, the federal declaratory action would serve a useful purpose: it would clarify the legal relations at issue by indicating whether James River is responsible for the damages in the state cases. There is no indication that the declaratory remedy would be used for procedural fencing purposes under the fourth factor. Under the fifth factor, there is no indication that declaring whether James River is responsible for the costs of the underlying actions would lead to any friction between federal and state courts, as James River is not a party to the underlying state cases. Under the sixth factor, there is no apparent alternative remedy as efficient as a declaratory judgment to determine James River's obligation in the underlyingh actions. Under the seventh factor, the underlying factual issues as to the mass shooting are not important to an informed resolution of this action. This action is a question of contract construction, and can be resolved by analyzing the Policy between James

River and R.I.C. and the applicable law. The factual issues in the underlying case therefore have no impact on the issues before this Court. Therefore, the state trial court is not in a better position to consider whether James River has exhausted the Assault and Battery Sublimit than this Court under the eighth factor. Under the ninth factor, the resolution of the issue depends on the application of Florida law. Here, the Court follows and applies Florida precedent and rules of construction to analyze the Policy between James River and R.I.C. The Court applies existing law in a straightforward manner and there is no indication that resolving this suit would lead to federalism concerns such that "a federal court [would] decide[] an unresolved question of state law, [and] issue preclusion prevents the creation of state court precedent on that issue in the companion case." *Id.* at 1059.

"A district court takes into account the similarity between any concurrent proceedings in its totality-of-the-circumstances analysis under *Ameritas*." *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1285 (11th Cir. 2021).[4] Overall, the declaratory judgment case in federal court raises different issues and implicates different laws and parties than the underlying state actions, without raising any issue of particular interest for one forum. "[T]he greater the difference between concurrent proceedings, the less likely refusing to exercise jurisdiction will further the principles of wise judicial administration, federalism, comity, and avoidance of duplicative and officious federal proceedings." *Id.* at 1285. The Court can address this declaratory judgment action.

James River is entitled to summary judgment on Ventura's sixth affirmative defense.

---

[4] Courts must look to the totality-of-the-circumstances here. The Eleventh Circuit made clear that "the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under § 2201(a)[.]" *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1284 (11th Cir. 2021).

5. **Seventh Affirmative Defense: Failure to State a Claim**

Ventura's seventh affirmative defense states as follows:

SEVENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that Plaintiff has failed to state a cause of action
for which it would be entitled to relief of any kind.

ECF No. [106] at 8.

James River states that Ventura's seventh affirmative defense, which alleges James River

fails to state a cause of action, fails because it is a general denial and not a valid affirmative defense.

ECF No. [116] at 15. Ventura fails to respond to this argument.

Failure to state a claim is a denial of James River's allegations "because it merely 'points

out a defect in the plaintiff's prima facie case.'" *J.G.G. Tobacco Holding Co., Inc. v. Antigua Esteli*

*Tobacco, Corp.*, No. 19-23732-CIV, 2020 WL 4926582, at *2 (S.D. Fla. May 20, 2020) (quoting

*In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 2010)). It is not an affirmative

defense and, accordingly, does not preclude James River from obtaining summary judgment in

this action. Courts in this circuit have granted summary judgment when confronted with denials

asserted as affirmative defenses. *Eli Rsch., LLC v. Must Have Info Inc.*, No. 2:13-CV-695-FTM-

38CM, 2015 WL 5934632, at *4 (M.D. Fla. Oct. 6, 2015) (citing *Tingley Systems, Inc. v.*

*HealthLink, Inc.,* 509 F.Supp.2d 1209 1220 (M.D. Fla.2007)). In other instances, "[r]ather than

grant summary judgment … the Court [has] treat[ed] this affirmative defense as a denial that

Plaintiffs can satisfy all the elements of their claims." *La Dolfina S.A., LLC v. Meeker*, No. 20-

82231-CIV, 2023 WL 10672906, at *17 (S.D. Fla. Dec. 15, 2023) (citation omitted). However, as

Ventura does not answer James River's arguments on this point, she does not meet her burden as

the non-moving party to "make a sufficient showing on each essential element of the case for

which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825.

The seventh affirmative defense does not preclude summary judgment. Accordingly, James River is entitled to summary judgment on Ventura's seventh affirmative defense.

### 6. Eighth and Ninth Affirmative Defenses: Bad Faith

EIGHTH AFFIRMATIVE DEFENSE The Defendant affirmatively alleges that the declaratory judgment action was filed in bad faith as part of an improper and/or illegal scheme and/or collusion with its insured, to provide an arena for res judicata and/or collateral estoppel or to forum shop.

NIN[]TH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that Plaintiff has committed bad faith settlement practices, in violation of Section 627.155, Florida Statutes, and are barred from recovery of any kind.

ECF No. [106] at 9.

James River states that Ventura's eighth and ninth affirmative defenses, which allege James River acted in "bad faith," is not ripe and Ventura does not have standing to assert it. ECF No. [116] at 15. Ventura does not respond on this point.

Ventura does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825. Further, as discussed above, a "bad faith" action is not ripe as "[t]he bad faith action does not accrue until the underlying issues of liability and damages have been resolved." *D'Agostino*, 669 F. Supp. 3d at 1189.

Accordingly, James River is entitled to summary judgment on Ventura's eighth and ninth affirmative defenses.

### 7. Tenth to Fourteenth Affirmative Defenses: Unclean Hands

Ventura's tenth to fourteenth affirmative defenses state as follows:

TENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that Plaintiff is barred from recovery of any kind by the doctrine of "unclean hands," as they seek equitable relief, although they have acted inequitably towards Defendants, (a) refusing to settle, in good faith, all of the subject claims still outstanding, and (b) by failing to tender all payments under the

provisions of the policy of insurance in violation of Section 627.155, Florida Statutes, and Florida common law and are therefore barred from recovery of any kind.

ELEVENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that Plaintiff is barred from recovery of any kind by the doctrine of "unclean hands," as Plaintiff seek equitable relief, although Plaintiff have acted inequitably towards Defendant (a) in that Plaintiff made material misrepresentation to the Defendant regarding the policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy in violation of Section 626.9541(1)(i)(2) Florida Statutes.

TWELFTH AFFIRMATIVE DEFENSE
 The Defendant affirmative alleges that Plaintiff is barred from recovery of any kind by the doctrine of "unclean hands," as Plaintiff seek equitable relief, although Plaintiff have acted inequitably towards Defendant by (a) Failing to adopt and implement standards for the proper investigation and payment of claims in violation of Section 626.9541(1)(i)(3)(a) of Florida Statute.

THIRTEENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that Plaintiff is barred from recovery of any kind by the doctrine of "unclean hands," as Plaintiff seek equitable relief, although Plaintiff have acted inequitably towards Defendant by misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue in violation of Section 626.9541(1)(i)(3)(b) Florida Statute.

FOURTEENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that Plaintiff is barred from recovery of any kind by the doctrine of "unclean hands," as Plaintiff seek equitable relief, although Plaintiff have acted inequitably towards Defendant by engaging in unfair claim settlement practices in violation of Section 626.9541(1)(i)(3)(i) Florida Statute.

ECF No. [106] at 9-10.

James River states that Ventura's tenth through fourteenth affirmative defenses of "unclean hands" are legally insufficient as they provide no detail, but upon closer inspection, it is clear that they are trying to allege James River acted in bad faith, which is not ripe. ECF No. [116] at 15-16. Ventura does not respond on this point and does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825. "[A] defendant may not defeat

summary judgment simply by alleging affirmative defenses." *Tubbs*, No. 19-CV-80553-Civ-Middlebrooks/Brannon, 2019 WL 7376706, *2. Further, as discussed above, a bad faith action is not ripe at this stage.

Accordingly, James River is entitled to summary judgment on Ventura's tenth to fourteenth affirmative defenses.

### 8. Fifteenth Affirmative Defense: Ambiguous

Ventura's fifteenth affirmative defense states as follows:

FIFTEENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that the policy is ambiguous as it relates to the coverage amount and Plaintiff's duty to defend.

ECF No. [106] at 10.

James River states Ventura's fifteenth affirmative defense alleges the policy is ambiguous, which is legally insufficient as it fails to identify any such ambiguity and the policy is clear. ECF No. [116] at 16. Ventura responds that the policy is illusory and therefore ambiguous. ECF No. [139] at 5-6, 10-11. The Court has already analyzed the argument and has found that the policy is not ambiguous.

Accordingly, James River is entitled to summary judgment on Ventura's fifteenth affirmative defense.

### 9. Sixteenth Affirmative Defense: Illusory

Ventura's sixteenth affirmative defense states as follows:

SIXTEENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that the policy is illusory as it relates to the coverage amount and Plaintiff's duty to defend.

ECF No. [106] at 10.

James River argues that Ventura's sixteenth affirmative defense fails because it alleges the policy is "illusory," but again provides no explanation to support this argument. ECF No. [116] at

16. Ventura responds that the policy is illusory. ECF No. [139] at 5-12. The Court has already analyzed the argument and has found that the policy is not illusory.

Accordingly, James River is entitled to summary judgment on Ventura's sixteenth affirmative defense.

### 10. Seventeenth Affirmative Defense: Waiver or Estoppel

Ventura's seventeenth affirmative defense states as follows:

SEVENTEENTH AFFIRMATIVE DEFENSE
The Defendant affirmative[ly] alleges that all or part of Plaintiff's claims are barred by waiver and/or estoppel.

ECF No. [106] at 10.

James River states that Ventura's seventeenth affirmative defense is legally insufficient as it simply alleges James River's claims are barred by "waiver and/or estoppel," but Florida law is clear that waiver and estoppel generally cannot create coverage. ECF No. [116] at 17. Ventura does not respond to this point, and does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825.

Further, waiver and estoppel cannot create coverage in excess of the Assault & Battery Sublimit. *See Axis Surplus Ins. Co. v. Caribbean Beach Club Ass'n, Inc*., 164 So. 3d 684, 687 (Fla. 2d DCA 2014) ("Waiver cannot create coverage."); *Twin City Fire Ins. Co. v. CR Techs., Inc*., 90 F. Supp. 3d 1320, 1329 (S.D. Fla. 2015) ("Estoppel may not be used to create coverage beyond the terms upon which the parties agreed in the Twin City Policy.").

Accordingly, James River is entitled to summary judgment on Ventura's seventeenth affirmative defense.

**11. Eighteenth Affirmative Defense: Damages**

Ventura's eighteenth affirmative defense states as follows:

EIGHTEENTH AFFIRMATIVE DEFENSE
The Defendant affirmative alleges that any damages allegedly suffered by Plaintiff or that could be suffered by Plaintiff was and is the result of Plaintiff's own misconduct and/or negligence.

ECF No. [106] at 10.

James River asserts that Ventura's eighteenth affirmative defense is legally insufficient as it simply states James River's damages are the result of its own "misconduct and/or negligence" without any detail, and to the extent it is attempting to assert bad faith, it is not ripe and Ventura does not have standing to assert it. ECF No. [116] at 17. Ventura does not respond to this point, and does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825. Further, there is no evidence in the record indicating that James River engaged in misconduct or negligence.

Accordingly, James River is entitled to summary judgment on Ventura's eighteenth affirmative defense.

**12. Nineteenth Affirmative Defense: Bad Faith (Procedural Fencing)**

James River states that Ventura's final affirmative defense, that alleges this lawsuit was filed in bad faith for the improper purpose of "procedural fencing," fails because declaratory judgment actions are common and encouraged to resolve coverage disputes in Florida. ECF No. [116] at 17. Ventura does not respond to this point, and she does not meet her burden as the non-moving party to "make a sufficient showing on each essential element of the case for which [s]he has the burden of proof." *Equifax Info. Servs., L.L.C.*, 327 F. App'x at 825.

Accordingly, James River is entitled to summary judgment on Ventura's nineteenth affirmative defense.

### vi.     Fees and Costs

Ventura demands attorney's fees and costs, ECF No. [139] at 13, but fails to state why she is entitled to fees and costs. Accordingly, the Court declines Ventura's request for attorney's fees and costs.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. [116]**, is **GRANTED**.

2.  Plaintiff James River's Motion to Strike, **ECF No. [145]**, is **GRANTED**.

3.  The Court **DECLARES** as follows:

    i.   The total available coverage for the Underlying Lawsuits is subject to the Policy's $50,000.00 Assault & Battery Sublimit;

    ii.  The Policy has been exhausted by James River's $50,000.00 settlement payment to Peterson's claim;

    iii. James River has no duty to defend or indemnify R.I.C. in the Underlying Lawsuits.

4.  The Clerk of Court shall **CLOSE** this case for administrative purposes only.

5.  To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

Case No. 23-cv-22907-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida on October 3, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record